## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **BARBARA A. WILLIAMS,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION FILE NO.** |
| **v.** | : | **1:06-CV-0285-CC/AJB** |
| | : | |
| **THE ART INSTITUTE OF ATLANTA,** | : | |
| | : | |
| **Defendant.** | : | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Currently before the Court are Plaintiff's Motion to Compel Discovery [Doc. 18];
Plaintiff's Motion for a Protective Order [Doc. 21]; Defendant's Construed Motion for
a Protective Order [Doc. 22 at 5-7]; and Defendant's Motion for an Extension of Time
to Complete Discovery [Doc. 25]. For the reasons set forth herein, the undersigned
**GRANTS IN PART AND DENIES IN PART** Plaintiff's motion to compel [Doc. 18];
**DENIES** Plaintiff's motion for a protective order [Doc. 21]; **GRANTS** Defendant's
construed motion for a protective order [Doc. 22 at 5-7]; and **GRANTS** Defendant's
motion for an extension of time to complete discovery [Doc. 25].

## I.      INTRODUCTION

Plaintiff's amended complaint alleges that she had been an employee with
Defendant, The Art Institute of Atlanta, since 1999. [Doc. 17 ¶ 5]. Beginning on

January 26, 2005, Plaintiff took a medical leave, and she was granted short term disability benefits from January 26 to February 15.  [*Id.* ¶¶ 6, 7].

In February 2005, Plaintiff confirmed to two of her subordinates that a supervisor, Chris Ferrell, had made racially derogatory remarks about them to Plaintiff.  [*Id.* ¶¶ 8-9].  Due to tension between Ferrell and the subordinate employees, the subordinates submitted an internal racial discrimination complaint, which identified Plaintiff as a witness to some of Ferrell's racially derogatory statements.  [*Id.* ¶¶ 10-11].

On March 1, 2005, Industrial Medial Consultants, Inc. ("IMC"), an agent of Defendant, notified Plaintiff that she needed to provide additional medical evidence for her disability benefits to continue.  [*Id.* ¶ 12].  After Plaintiff submitted medical evidence, Plaintiff's request for disability benefits was denied from February 15 to July 1 when Plaintiff returned to work.  [*Id.* ¶¶ 13-14].  Defendant had the authority to override IMC's disability determination.  [*Id.* ¶ 15].  When an employee did not meet short-term disability requirements, Defendant would pay employees if they worked from home, but Defendant denied Plaintiff's request to work from home after Human Resources employees learned that Plaintiff was contacted by her subordinates.  [*Id.* ¶¶ 16-17].  Plaintiff filed an EEOC charge on June 23, 2005, after which she was subject to harassment.  [*Id.* ¶¶ 19-20].

2

On February 8, 2006, Plaintiff filed a one-count civil complaint against Defendant, alleging retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII").  Defendant answered on March 2, 2006.  [Doc. 2].  The discovery deadline was then set for July 31, 2006.  [*See* Dkt. Entry for Mar. 2, 2006].  On April 6, 2006, Plaintiff filed a motion to amend her complaint to add a cause of action for retaliation under 42 U.S.C. § 1981.  [Doc. 9].  The Court granted the motion to amend on July 7, 2006, [Doc. 16].  Plaintiff amended her complaint [Doc. 17], and Defendant answered [Doc. 24].

The parties have four motions currently pending before the Court: (1) Plaintiff's Motion to Compel [Doc. 18]; (2) Plaintiff's Motion for a Protective Order [Doc. 21]; (3) Defendant's Construed Motion for a Protective Order [Doc. 22 at 5-7]; and (4) Defendant's Motion for an Extension of Time for Discovery [Doc. 25].  The Court addresses each motion in turn.

## II.    DISCUSSION

### A.    *Motion to Compel  [Doc. 18]*

Plaintiff seeks an order compelling Defendant to respond to ten (10) interrogatories and eight (8) document requests.  [Doc. 18].  The following law guides the Court's discussion of Plaintiff's motion to compel.

3

During the discovery period, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1). A court may limit discovery of relevant material if it determines that:

> the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive . . .; or . . . the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

FED. R. CIV. P. 26(b)(2)(i), (iii). Accordingly, "discovery in Title VII cases is 'not without limits. The information sought must be relevant and not overly burdensome to the responding party.'" *Wright v. AmSouth Bancorporation*, 320 F.3d 1198, 1205 (11th Cir. 2003) (quoting *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1570 (11th Cir. 1992)).

Rule 33 provides that "any party may serve upon any other party written interrogatories . . . to be answered by the party served." FED. R. CIV. P. 33(a). "The party submitting the interrogatories may move for an order under Rule 37(a) with respect to any objection to or other failure to answer an interrogatory." FED. R. CIV. P.

4

37(b)(5).  Under Rule 34, "[a]ny party may serve on any other party a request . . . to produce and permit the party making the request . . . to inspect and copy, any designated documents . . . ." FED. R. CIV. P. 34(a).  "The request shall set forth, either by individual item or by category, the items to be inspected and describe each with reasonable particularity."  If a party does not respond to the request, the requesting party may move for an order under Rule 37(a).  FED. R. CIV. P. 34(b).

Under Rule 37, a party may move to compel an answer to an interrogatory or production of documents:

> [i]f . . . a party fails to answer an interrogatory submitted under Rule 33, or if a party, in response to a request for inspection submitted under Rule 34, fails to respond that inspection will be permitted as requested or fails to permit inspection as requested [under Rule 34] . . . .  The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make the discovery in an effort to secure the information or material without court action.

FED. R. CIV. P. 37(a)(2)(B).

"The party resisting discovery has a 'heavy burden' of showing why discovery should be denied." *Roehrs v. Minn. Life Ins. Co.*, 228 F.R.D. 642, 644 (D. Ariz. 2005).  Once the resisting party meets its burden, the moving party has the burden of showing the information is relevant and necessary.  *Gober v. City of Leesburg*, 197 F.R.D. 519, 521 (M.D. Fla. 2000); *see also Hunter's Ridge Golf Co., Inc. v. Georgia-Pacific Corp.*,

233 F.R.D. 678, 680 (M.D. Fla. 2006) ("The party seeking production must demonstrate that the request is relevant, i.e., calculated to lead to admissible evidence, although the requested material need not itself be admissible at trial.").

        *1.    Interrogatory No. 1*

In Interrogatory No. 1, Plaintiff sought the following information for the period May 1, 2001 through May 31, 2005: (1) the names of Defendant's employees who were on short-term disability or taking other absences because of a medical condition; (2) the type of leave taken; (3) the dates the employees took the leave; (4) whether the employees received monetary compensation during the leave; (5) the type of monetary compensation; (6) the names of the decisionmaker(s); and (7) the type of documents used to determine whether the employee received monetary compensation. [Doc. 18 at 2]. Defendant objected to the interrogatory on the following grounds: (1) it was vastly overbroad; (2) it sought irrelevant information; (3) it sought personal and confidential information which it was prohibited from disclosing under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"); and (4) Plaintiff sought information outside of Defendant's control and possession in that IMC administered Defendant's short term disability program when Plaintiff was on leave such that Defendant has no role in determining whether an employee meets the

6

requirements for benefits under the short term disability program. Defendant stated, however, that it would identify the employees who received short-term disability benefits since January 2005 when IMC began administering the disability program. [*Id.* at 2-3].

Plaintiff argues in her motion to compel that Defendant's response is not responsive and the mere fact that the request is overbroad should not permit Defendant to ignore the interrogatory. [*Id.* at 3]. Plaintiff also contends that HIPAA does not apply to Defendant and notes that she seeks payment records, not medical records. Finally, Plaintiff argues that even if HIPAA applied, it would not bar the information sought in discovery. [*Id.* at 4].

Defendant responds that the interrogatory is overbroad because the time frame for the discovery is too expansive and imposes an undue burden as a result. Defendant contends that the relevant time frame is only after January 2005 because Plaintiff was denied short-term disability benefits from February 2005 to July 2005 and Plaintiff applied for these benefits through IMC, which began administering short term benefits in January 2005 for Defendant. Defendant finally argues that Plaintiff seeks medical and personnel information that is confidential, but that once a protective order is entered, it will respond to the relevant discovery requests. [Doc. 22 at 8-10].

7

The Court concludes that Plaintiff is entitled to the information that she seeks in Interrogatory No. 1.  Because the Court grants a protective order concerning the personnel and medical information as discussed below, the only issue is whether the scope of the discovery request is overly broad.

"[C]ourts have the duty to pare down overbroad discovery requests under Rule 26(b)(2), which provides that information may sometimes be withheld, even if relevant." *Rowlin v. Ala. Dept. of Pub. Safety*, 200 F.R.D. 459, 461 (M.D. Ala. 2001). "The objecting party[, however,] must do more than 'simply intone [the] familiar litany that the interrogatories are burdensome, oppressive or overly broad'" before a court will narrow overbroad discovery. *See In re Priceline.com Inc. Securities Litig.*, 233 F.R.D. 83, 85 (D. Conn. 2005) (quoting *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 42 (S.D.N.Y. 1984)). "Instead, the objecting party must 'show specifically . . . how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden.'" *Id.* (quoting *Phillips Petroleum Co.*, 105 F.R.D. at 42)); *Coker v. Duke & Co., Inc.*, 177 F.R.D. 682, 686 (M.D. Ala. 1998) ("Under well-settled law, the party resisting production bears the responsibility of establishing undue burden" through detailed affidavits or other evidence.).

8

Defendant focuses its overbroad argument on its contention that IMC was the entity that denied Plaintiff short term disability benefits and IMC did not take over the disability benefit program until January 2005.  Plaintiff alleges, however, that Defendant was involved in the disability benefit decisionmaking process and provided paid leave for people even if they did not qualify for disability.  [Doc. 17 ¶ 16; Doc. 28 at 3].  Based on these allegations, Plaintiff is entitled to discovery before IMC took over the short-term disability benefit program to determine whether Defendant treated her differently than other employees who applied for short-term disability.

The question remains how far back Plaintiff is entitled to seek information.  In employment discrimination cases, "courts have permitted discovery periods as long as eight to ten years," but "the norm . . . seems to be anywhere between three and five years."  *Briddell v. Saint Gobain Abrasives Inc.*, 233 F.R.D. 57, 60 (D. Mass. 2005) (citing cases); *see also Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 655 & n.29

AO 72A
(Rev.8/82)

(D. Kan. 2004) (citing cases ).[1]  Clearly, the post-December 2004 time frame for which Defendant advocates is inadequate because it would only cover a seven month period.

Based on the case law, the Court concludes that Plaintiff's five year period is not overbroad although it certainly is on the cusp of temporal remoteness.  Defendant has failed to suggest any reason why the time frame for this information is overbroad or burdensome other than its argument that the only relevant events occurred during and after January 2005. As a result, the Court concludes that Defendant has not met its burden of showing that the five year discovery period is overly broad.

Accordingly, the Court **GRANTS** Plaintiff's motion to compel as to Interrogatory No. 1 subject to this Court's protective order.

### 2.    Interrogatory No. 2

In Plaintiff's Interrogatory No. 2, she sought the following information: (1) the name of all entities that handled Defendant's short-term disability benefit program

---

[1]    Courts in the Eleventh Circuit appear to use a two to five year time frame. *See Adkins v. Hosp. Auth. of Houston County*, No. 2006 WL 1174446 at * 4 (M.D. Ga. May 2, 2006) (indicating that discovery was limited to events that occurred within five years of plaintiff's termination and only similarly situated individuals); *Rowlin*, 200 F.R.D. at 462 n.6 (limiting discovery request to two years); *Parker v. Kroger Co., Inc.*, No. 76-1153, 1977 WL 90 at * 3 (N.D. Ga. Mar. 18, 1977) (determining relevant time frame for discovery to be two years because "plaintiffs should be allowed to discover certain historical information as to defendant's internal employment policies and practices").

10

between May 1, 2001, and May 31, 2005; (2) the dates that the entities handled the disability program; and (3) the identity of documents that would provide evidence of the legal relationship.  [Doc. 18 at 4].  Defendant responded with information concerning IMC.  [*Id.*].

Plaintiff argues that Defendant's response is clearly not responsive in that it failed to identify entities other than IMC between 2001 and 2005.  [Doc. 18 at 5].  Plaintiff also asserts that she will be able to show retaliation by identifying her treatment before engaging in the protected activity.  [*Id.*].

Defendant responds that the interrogatory is overbroad because the time frame for the discovery is too expansive and imposes an undue burden as a result.  Defendant contends that the relevant time frame is only after January 2005 because Plaintiff was denied short-term disability benefits from February 2005 to July 2005 and Plaintiff applied for these benefits through IMC, which began administering short term benefits in January 2005 for Defendant.  [Doc. 22 at 8-9].

The Court disagrees with Defendant.  Again, Plaintiff has alleged that Defendant plays a role in the disability determinations and that evidence indicates that Defendant has provided compensation to employees who applied for but were not granted disability.  Plaintiff is entitled to know the other short-term disability providers, the

11

dates of the relationship between providers and Defendant, and the identity of the documents that would show the legal relationship. Other than Defendant's discredited argument that tries to focus discovery on the dates that IMC administered the short-term disability program, Defendant has failed to explain why the evidence was overbroad or burdensome.

Accordingly, the Court **GRANTS** Plaintiff's motion to compel as to Interrogatory No. 2.

### 3.    Interrogatory No. 3

Plaintiff sought the following information in her third interrogatory: (1) Defendant's employees who were denied short-term disability benefits after January 1, 2004; (2) the date that employees applied for the benefits; (3) the date that employees were denied benefits; (4) the reason for the denial; and (5) whether the employee received compensation from another source. [Doc. 18 at 5]. Defendant objected to the interrogatory on the following grounds: (1) it was "vastly" overbroad; (2) it sought highly personal and confidential information, which it could not disclose under HIPAA; and (3) it sought information outside of Defendant's possession and control. Defendant stated that it would identify employees who submitted applications for benefits denied by IMC upon entry of a protective order by the parties. [Doc. 18 at 5-6].

12

Plaintiff argues that Defendant has not adequately responded.  She states that she seeks this information to show that Defendant provided other employees denied short-term disability benefits with monetary compensation.  [Doc. 18 at 6].

Defendant responds that the interrogatory is overbroad because the time frame for the discovery is too expansive and imposes an undue burden as a result.  Defendant contends that the relevant time frame is only after January 2005 because Plaintiff was denied short-term disability benefits from February 2005 to July 2005 and Plaintiff applied for these benefits through IMC, which began administering short term benefits in January 2005 for Defendant.  Defendant finally argues that Plaintiff seeks medical information and personnel files that are confidential, but that once a protective order is entered, it will respond to the relevant discovery requests.  [Doc. 22 at 8-10].

The Court concludes that Plaintiff is entitled to the discovery requested.  As far as the privacy concerns, the Court's protective order remedies these concerns.  As discussed above, the period before January 2005 is relevant based on Plaintiff's allegations that Defendant paid employees denied short-term disability benefits. Insofar as Defendant's general claims that Plaintiff's requests are expansive and unduly burdensome, Defendant has not met its burden of explaining why they are burdensome. *See In re Priceline.com Inc. Securities Litig.*, 233 F.R.D. at 85; *Coker*, 177 F.R.D.

at 686.  Defendant has otherwise failed to explain why the interrogatory is burdensome or overbroad.

Accordingly, the Court **GRANTS** Plaintiff's motion to compel as to Interrogatory No. 3.

> 4.     *Interrogatory No. 5*

In Interrogatory No. 5, Plaintiff sought a list of all training that she received between January 1, 2004, and the present, including the type of training and the date of such training.  She also wanted to know the identities of the decisionmakers. [Doc. 18 at 6].  Defendant objected to the interrogatory as overly broad and irrelevant, but noted that it is compiling the information.  [*Id.*].

Plaintiff argues that this response is inadequate because Defendant should have provided whatever information it had after 30 days and then supplemented.  [Doc. 18 at 7].  Defendant does not appear to respond to this argument.  [*See generally* Doc. 22]. Thus, Plaintiff's motion as to Interrogatory No. 5 is unopposed.  *See* N.D. Ga. L. R. 7.1B ("Failure to file a response [to a motion] shall indicate that there is no opposition to the motion.").

Accordingly, the Court **GRANTS** Plaintiff's motion to compel as to Interrogatory No. 5.

14

5.      *Interrogatories Nos. 6, 7, 8, 9, 10, and 11*

In Interrogatories Nos. 6-11, Plaintiff asks Defendant to "[s]tate all facts that support defendant's contentions as set forth in its" second, third, seventh, eighth, fifteenth, and twenty-second defenses in the March 2 answer.[2]   [Doc. 18, Exh. C at 8-10.].   Defendant provided the same response as to each interrogatory, namely that the interrogatories were premature and

> Defendant intends to use the discovery process, which has just begun in this matter, to identify facts that support its defenses.  Subject to an without waiving its objections, Defendant states that it asserted affirmative defenses in its Answer to avoid waiver of those defenses under the applicable Federal Rules of Civil Procedure.

[*Id.*].[3]

-------------------

[2]      These affirmative defenses are as follows: (1) insufficiency of process or insufficiency of service of process (Second Defense); (2) lack of subject matter jurisdiction or venue (Third Defense); (3) Plaintiff's claims are time-barred by the statute of limitations or laches (Seventh Defense); (4) Plaintiff's claims are waived by estoppel or waiver (Eighth Defense); (5) Plaintiff failed to comply with the statutory prerequisites for filing suit (Fifteenth Defense); (6) Defendant exercised reasonable care to correct harassing behavior and Plaintiff failed to take advantage of preventive opportunities (Twenty Second Defense).  [Doc. 2].

[3]      Plaintiff's motion to compel as to Interrogatories Nos. 6-11 fails to comply with this Court's Local Rules, which state the motion to compel shall "[q]uote verbatim each disclosure, interrogatory, deposition question, request for designation of deponent, or request for inspection to which objection is taken," and state each objection. N.D. Ga. L.R. 37.1A(1)-(2).  Plaintiff merely refers the Court to Exhibit C, which contains Defendant's responses to the interrogatories and stated that Defendant's

Plaintiff argues that Defendant should have and could have provided some response to these interrogatories in that discovery was about to expire in two weeks. Plaintiff also points out Defendant failed to list these defenses in its initial disclosures. [Doc. 18 at 7]. Defendant responds that the interrogatories were premature because Plaintiff had not provided written responses to interrogatories until after filing the motion to compel. Citing to Rule 33(c), Defendant also states that it should be given the opportunity to conduct discovery before having to respond to the interrogatories. [Doc. 22 at 10-11].

Under Rule 33,

> An interrogatory otherwise proper is not necessarily objectionable merely because an answer to the interrogatory involves an opinion or contention that relates to fact or the application of law to fact, but the court *may* order that such an interrogatory need not be answered until after designated discovery has been completed or until a pre-trial conference or other later time.

_____

responses to the contentions are inadequate and the examples of the inadequacies are so numerous that they are not included. [Doc. 18 at 7]. Defendant does not object to Plaintiff's failure to follow the local rule, [*see* Doc. 22]. The Court will exercise its discretion and consider the objections, but Plaintiff should be aware that the Court will not always ignore clear violations of the local rules.

FED. R. CIV. P. 33(c) (emphasis added).  This rule gives a court discretion to allow a party to delay responding where mixed questions of law and fact might create disputes between the parties.  FED. R. CIV. P. 33 advisory committee notes (1970).

The Court concludes that Defendant must answer Interrogatories Nos. 6-11. Much of the  information that Plaintiff seeks concerning affirmative defenses  would appear to be in Defendant's possession or knowledge before Plaintiff ever responded to Defendant's discovery requests.  For instance, it is not apparent why Defendant needed discovery to respond to the interrogatories concerning venue, subject matter jurisdiction, sufficiency of process, and Plaintiff's failure to comply with statutory prerequisites.  Nor does Defendant explain why discovery was necessary to respond to interrogatories concerning these affirmative defenses.  Although Defendant may have needed discovery to inform Plaintiff about the basis of its affirmative defenses concerning waiver, estoppel, the timeliness of Plaintiff's claims, and Plaintiff's failure to take preventative opportunities, Defendant has also failed to explain why this information had to wait until Plaintiff provided discovery.

Accordingly, the Court **GRANTS** Plaintiff's motion to compel as to Interrogatories Nos. 6-11.

17

6.      *Document Request No. 2*

Plaintiff's second document request sought employee handbooks and/or documents governing Defendant's short-term disability programs for the period May 1, 2001, to July 1, 2005.  [Doc. 18 at 8].  Defendant objected to the document request as overly broad and seeking irrelevant documents.  Defendant however stated that it would produce non-privileged documents concerning Defendant's short term disability program from January 2005 when IMC administered the program.  [*Id.*].

Plaintiff argues that Defendant did not provide all documents responsive for the time frame.  Plaintiff also contends that the time period before January 2005 is relevant because Plaintiff had previously been on disability leave, which would allow her to compare her treatment while on short-term disability.  [Doc. 18 at 8].  Finally, Plaintiff contends that Defendant failed to identify privileged documents under FED. R. CIV. P. 26(b)(5).  Defendant responds that it agreed to produce the documents for the relevant time period, *i.e.*, the period beginning January 2005.  Otherwise, Defendant contends that the request is too expansive in that the relevant time period is January 2005 and after.  [Doc. 22 at 11-12].

The Court concludes that Plaintiff should be provided the information that she seeks.  First, Plaintiff alleges without opposition from Defendant that she was on

AO 72A
(Rev.8/82)

disability leave prior to January 2005.  It, therefore, would appear to be relevant to compare Defendant's treatment of Plaintiff on her previous leave with her treatment after she became involved with discrimination complaints and experienced the alleged retaliation.  Second, Defendant's only argument is that the only relevant period is January 2005 and later because IMC took over the program at this time.  Even accepting that IMC took control of the short term disability program at this time, which Plaintiff opposes, Plaintiff's decision to seek information about previous plans is relevant in that it could help explain if her different treatment under different providers was justified.  Although the discovery request for information dating back to May 1, 2005, may be temporally remote, Defendant has failed to meet its burden of explaining why it should not provide this information.

Accordingly, the Court **GRANTS** Plaintiff's Document Request No. 2.

7.    *Document Request No. 4*

In Document Request No. 4, Plaintiff sought EEOC charges, grievances and/or judicial complaints alleging retaliation by one of Defendant's employees from December 31, 2003, until the present.  [Doc. 18 at 9].  Defendant objected because the request sought documents protected by attorney/client privilege or the work product

doctrine.  Defendant also objected that the request was vague, overbroad, and sought irrelevant documents.  [*Id.*].

Plaintiff argues that courts have allowed plaintiffs to obtain discovery of other EEOC charges.  Plaintiff also contends that the privilege claims are unpersuasive. [Doc. 18 at 9].  Defendant responds that the request is overbroad in that it is not tailored and therefore it seeks cases that are substantially dissimilar and would not help her obtain relevant information.  Defendant also contends that the request seeks complaints against Defendant when the decisionmaker in this case is IMC.  [Doc. 22 at 12-13]. Plaintiff replies that her document request targets the correct decisionmaker because evidence indicates that Defendant made decisions concerning disability benefits and paid salaries of other employees who did not meet the disability requirements.  [Doc. 28 at 3].

The Court concludes that Plaintiff is entitled to the information sought in Document Request No. 4.  The Court finds that such information might lead to evidence suggesting that Defendant's decisions concerning Plaintiff's short term disability may have been tainted by retaliation by showing that Defendant has retaliated when employees engage in protected activity under Title VII.  *See Barfoot v. Boeing Co.*, 184 F.R.D. 642, 644 (N.D. Ala. 1999) ("The Court does not buy into the

defendant's argument that discovery of EEOC charges, lawsuits, and EEO internal complaints filed by other employees cannot lead to the discovery of admissible evidence.").  The Court reiterates that it recognizes that Defendant's position is that IMC was the decisionmaker concerning Plaintiff's disability determination, but Plaintiff has alleged that Defendant played a role in the decisionmaking process and did make decisions about employee pay if an employee was denied benefits.  Thus, Plaintiff's allegations suggest that Defendant at least played some role in the short-term decisionmaking process, rendering the pre-IMC short-term disability time frame relevant.  Other lawsuits, charges, and grievances concerning retaliation against Defendant may therefore be relevant.

Accordingly, the Court **GRANTS** Plaintiff's motion to compel concerning Document Request No. 4.

21

8.     *Document Requests Nos. 5-7, 9-11, and 13*[4]

In Document Request Nos. 5-6, Plaintiff sought correspondence between January 2005 and July 1, 2005, by Defendant's employees and agents concerning Plaintiff's request for short-term disability and that supported the denial of benefits to Plaintiff. [Doc. 18, Exh. D at 6].   In Document Request No. 7, Plaintiff sought all contracts between Defendant and third parties concerning the handling of short-term benefits. [Doc. 18, Exh. D at 7].   Defendant objected to these requests on the grounds that Plaintiff sought information protected by the attorney-client privilege or the work product doctrine, but indicated that it would provide non-privileged documents. [*Id.* at 6-7].

In Document Requests Nos. 9-11 and 13, Plaintiff sought: (1) documents in Defendant's Response No. 7 in its initial disclosures; (2) payroll records for Plaintiff between January 1, 2002, and July 1, 2005; (3) documents showing Plaintiff's area of work responsibilities between January 1, 2004, and July 1, 2005; and (4) documents

---

[4]     Again, the Court notes that Plaintiff's motion to compel fails to follow the local rules for these document requests pursuant to N.D. Ga. L.R. 37.1A(1)-(2) for the reasons set forth in footnote 3.  [*See* Doc. 18 at 9].  The Court considers, however, the motion to compel on these document requests because Defendant's blanket statement that documents are privileged without following Rule 26(b)(5) is clearly contrary to the Rules of Civil Procedure.

22

listed in Defendant's answer No. 7 to its initial disclosures.  [*Id.* at 8, 9].  For each

request, Defendant responded that it would "produce all non-privileged documents in

its possession, custody, or control."  [*Id.* at 8-9].

Plaintiff argues that Defendant's withholding of privileged documents is

erroneous because Defendant failed to follow Rule 26(b)(5), which can render the

privilege waived.  Defendant responds that it will produce the documents requested in

requests 5-9, 11, and 13.  It also states that it will identify those documents that it seeks

to withhold as privileged in a privilege log.  [Doc. 22 at 15].

Under Rule 26,

> When a party withholds information otherwise discoverable under
> these rules by claiming that it is privileged or subject to protection as trial
> preparation material, the party shall make the claim expressly and shall
> describe the nature of the documents, communications, or things not
> produced or disclosed in a manner that, without revealing information
> itself privileged or protected, will enable other parties to assess the
> applicability of the privilege or protection.

FED. R. CIV. P. 26(b)(5).  The advisory committee notes explicitly state that a party

"must also provide sufficient information to enable other parties to evaluate the

applicability of the claimed privilege or protection."  FED. R. CIV. P. 26(b)(5) advisory

committee notes (1993).

23

To the extent that Defendant provided the information requested from these documents, the Court **DENIES AS MOOT** Plaintiff's motion to compel.  It appears that Defendant contends that some information sought in the document request is privileged.  If this is the case, Defendant is obligated under Rule 26(b)(5) to "describe the nature of the documents, communications, or things not produced or disclosed in a manner that . . . will enable other parties to assess the applicability of the privilege or protection."  As a result, Defendant **SHALL** follow the dictates of Rule 26(b)(5) concerning the alleged confidential or privileged information.

9.    *Document Request No. 8*

In Document Request No. 8, Plaintiff sought personnel files or other files maintained by Defendant for employees who applied for short-term disability benefits between May 1, 2001, and July 1, 2005.  [Doc. 18 at 10].  Defendant objected to the request because it was vague, overbroad, and sought irrelevant documents.  Defendant also objected that the request sought personal and confidential information of nonparties that was not likely to lead to admissible evidence.  [*Id.*].

Plaintiff contends that she is entitled to personnel files of comparators.  [Doc. 18 at 10].  Defendant responds that Plaintiff has used an overly broad time period and Defendant stopped being the decisionmaker concerning benefits as of January 2005.

24

Defendant also contends that Plaintiff needs to show comparability between the positions that she held and the people she is seeking information about. [Doc. 22 at 14-15].

Courts have noted that "there is a strong public policy against the public disclosure of personnel files," but personnel files are generally permitted to be disclosed in discovery, where there is a protective order or confidentiality order, for: (1) those "employees whose action or inaction has a direct bearing on the Plaintiff's claims or Defendant's affirmative defenses"; or (2) those employees whom a plaintiff believes were treated differently from her. *See Cason v. Builders FirstSource-Southeast Group, Inc.*, 159 F. Supp. 2d 242, 247 (W.D.N.C. 2001); *Barfoot*, 184 F.R.D. at 644 (permitting discovery of personnel files in that information within them might relevant for establishing pretext or a *prima facie* case). Courts have not permitted, however, a plaintiff to obtain the entire personnel file merely "because of the possibility that there is something in it that may prove his case." A plaintiff may request "specific information from a personnel file to see if persons in similar situations were treated differently." *MacIntosh v. Building Owners and Managers Ass'n Int'l*, 231 F.R.D. 106, 108-09 (D.D.C. 2005); *Onwuka v. Fed. Express Corp.*, 178 F.R.D. 508, 517 (D. Minn. 1997) ("[T]he proper balance, between the privacy interests of non-party third persons,

and the discovery interests of a party litigant, is to assure that only those portions of the pertinent personnel files, which are clearly relevant to the parties' claims, are open to disclosure . . . .").

The Court concludes that Plaintiff is entitled to certain information in the personnel files who applied for short term disability; however, the Court will not require Defendant to provide the entire personnel files. Plaintiff's document request, as it currently stands, seeks information merely because of the possibility that the personnel file may contain relevant information. *See MacIntosh*, 231 F.R.D. at 108-09. As a result, the Court concludes that Plaintiff is not entitled to the entire personnel files of possible comparators. Plaintiff will be entitled, however, to discovery for a five year period because Defendant, as previously discussed, has not successfully argued why the five year period is too burdensome and overbroad. Plaintiff shall limit her discovery to documents in the personnel file that would reveal she was treated differently than others who applied for short-term disability benefits. The Court will allow Plaintiff to tailor her request for information in a subsequent document request because she is more familiar than the Court with the type of information in Defendant's personnel files.

Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion to compel concerning Document Request No. 8.  Plaintiff is not entitled to entire personnel folders of individuals who were denied short-term disability benefits.  Plaintiff shall be entitled to certain information within the personnel folders or other files of those who applied for short-term disability benefits.

       *10.    Sanctions*

Plaintiff contends that she is entitled to attorney's fees and costs associated with filing the motion to compel because no reasonable person could have believed that the plaintiff was not entitled to the discovery requested.  [Doc. 18 at 10].  Defendant responds that its nondisclosure was reasonably justified as Defendant did not attempt to narrow her discovery requests and its delay in responding to discovery was a result of Plaintiff's refusal to enter into a protective order.  [Doc. 22 at 16-17].  Defendant then argues that Plaintiff be required to pay attorneys' fees and costs for opposing the motion to compel because Plaintiff's motion was not substantially justified in filing the motion as she inappropriately refused to agree to the confidentiality of certain information and refused to tailor her discovery requests to the appropriate time frame. [*Id.* at 17-20].

The Court will not assess sanctions. "If a motion is granted in part and denied in part, the court may enter any protective order authorized under Rule 26(c) and may, after affording an opportunity to be heard, apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner." FED. R. CIV. P. 37(a)(4)(C). Although many of Plaintiff's discovery requests were justified, Defendant was substantially justified in opposing some discovery requests. The Court chooses not to extend the litigation concerning discovery disputes in the instant case and, therefore, will not award sanctions to either party. The parties shall cover their own expenses associated with the filing of the motion to compel.

B.    *Motions for Protective Orders [Docs. 21, 22 at 5-7]*

Both parties have sought a protective order from this Court. The Court applies the following law to both motions.

Protective orders are governed by Rule 26(c), which states in relevant part:

Upon motion by a party or by the person from whom discovery is sought, *accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties* in an effort to resolve the dispute without court action, *and for good cause shown*, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

28

(1) that the disclosure or discovery not be had

(2) that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place;

. . .

(4) that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters;

. . .

FED. R. CIV. P. 26(c) (emphasis added).

"The burden of showing good cause for a protective order rests on the party requesting relief." *Stamps v. Encore Receivable Mgmt., Inc.*, 232 F.R.D. 419, 423 (N.D. Ga. 2005). Good cause "signifies a sound basis or legitimate need to take judicial action." *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987). To determine good cause, federal courts have imposed a balancing the interests approach such that courts balance the non-movant's interest in obtaining the information against the movant's interest in keeping the information private. *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985).

Once a Court determines whether a party has good cause for a protective order, Rule 26(c) further provides:

AO 72A
(Rev.8/82)

> If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or other person provide or permit discovery.  The provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to the motion.

FED. R. CIV. P. 26(c).  Under Rule 37(a)(4),

> If the motion [for a protective order] is denied, the court . . . shall, after affording an opportunity to be heard, require the moving party or the attorney filing the motion or both of them to pay the party or deponent who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney's fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust.

FED. R. CIV. P. 37(a)(4)(B).

The Court addresses the parties' motions for protective orders in turn.

### 1.    *Plaintiff's Motion for a Protective Order  [Doc. 21]*

The relevant facts for Plaintiff's motion for a protective order are as follows.

The parties ran into problems with discovery in June of 2006.  As a result of these discovery disputes, Plaintiff's counsel indicated on July 11 that "we cannot move into depositions."  [Doc. 27 at Exh. A].  Defendant responded in part by requesting that Plaintiff's counsel "provide available dates for Plaintiff's deposition."  [*Id.*].  Apparently, Plaintiff's counsel never responded.  Instead, on July 26, 2006, Defendant faxed Plaintiff's counsel a notice of deposition indicating that Plaintiff's deposition was

scheduled for July 31, 2006, in Defendant's counsel's office.  [Doc. 21 at Exh. A].

On July 27, 2006, Plaintiff's counsel sent a letter by fax and mail stating that neither

she nor Plaintiff would be able to attend, but stated that the parties should set a date and

time mutually convenient for all parties.  [*Id.* at Exh. B].  As a result, Plaintiff did not

attend the July 31, 2006, deposition.  [Doc. 27 at Exh. F ¶ 2].[5]

Plaintiff contends in her July 31 motion that a protective order is necessary to

prevent Defendant from taking her deposition on July 31, 2006, because Defendant

only gave four days notice of the deposition. [Doc. 21].  Defendant contends that the

motion should be denied because Defendant would be prejudiced if the motion were

granted as Plaintiff failed to appear for a properly noticed deposition.  [Doc. 27 at 3].

Defendant also contends that the requirements for a protective order have not been met

as established by FED. R. CIV. P. 26(b)(1).  [*Id.* at 4-5].

The Court concludes that the motion for a protective order must be denied.

Plaintiff has not provided the court with a certification that the parties conferred in

---

[5]      Both parties attach documents to their briefs without submitting an affidavit concerning the authenticity of the documents or explaining the documents. *See* N.D. Ga. L.R. 7.1A(1) ("If allegations of fact are relied upon, supporting affidavits must be attached to the memorandum of law."); N.D. Ga. L.R. 7.1A(2) (requiring response to a motion to include, *inter alia*, "responsive memorandum, affidavits, and any other responsive material").

good faith to resolve the discovery dispute without court action as required by Rule 26(c).  As a result, the motion for a protective order is denied.  *See* FED. R. CIV. P. 26(c).

Even if Plaintiff had presented such certification, the Court would find that the parties had not conferred in good faith.  Based on the materials submitted, it appears that the parties traded faxes and/or letters concerning the date of Plaintiff's deposition. This correspondence by fax and letter fails to indicate that the parties actually verbally discussed the scheduling of the deposition or tried to resolve the dispute without bringing the Court into the discovery dispute.  This manner of communicating does not demonstrate the good faith efforts that the rules envision.  Rather, it is just another method of gamesmanship that the good fath conference requirement was designed to prevent.  *Cf. Shuffle Master, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166, 172 (D. Nev. 1996) (finding party did not confer in good faith where counsel merely sent faxes and counsel "never personally discussed with opposing counsel a reasonable resolution to their discovery dispute").

As a result, the Court **DENIES** Plaintiff's motion for a protective order. The parties **SHALL CONFER** and agree on a mutually agreeable time and place for Plaintiff's deposition to be taken.  Plaintiff's deposition **SHALL** be taken within thirty

32

(30) days of entry of this order unless the parties mutually agree to another date prior to the expiration of the thirty (30) day period.

Because the Court has no choice but to deny the motion for the protective order, the Court turns to Rule 37(a)(4). *See* FED. R. CIV. P. 26(c). Although Defendant did not request sanctions under Rule 37(a)(4)(B), Rule 37 appears to require the Court to consider sanctions regardless of whether a motion for sanctions is filed. *See* FED. R. CIV. P. 37 advisory committee notes (1948) (indicating expenses should normally be awarded and stating that the rule "presses the court to address itself to abusive practices"); *VICA Coal Co., Inc. v. Crosby*, 212 F.R.D. 498, 506 (S.D. W.Va. 2003) (indicating that Rule 37(a)(4) requires fees to be awarded when motion to compel is granted); *Wilson v. Olathe Bank*, 184 F.R.D. 395, 399 (D. Kan. 1999) ("Overruling a motion for protective order prompts consideration of sanctions under Fed.R.Civ.P. 37(a)(4)(B).").

The Court concludes that an award of sanctions would be unjust. "In making this determination, it [is] useful to examine the circumstances that led up to the filing of [the] motion." *Cobell v. Norton*, 213 F.R.D. 48, 62 (D.D.C. 2003). The circumstances reveal that counsel for both parties are responsible for the problems involved with the scheduling of Plaintiff's deposition.

33

The parties appear to have run into problems with discovery in June 2006. Although Plaintiff did not believe that depositions should be taken until after the discovery disputes were resolved, [Doc. 27 at Exh. A], Defendant sought "available dates for Plaintiff's deposition," [*Id.*], on July 11.  It appears that both parties stopped corresponding between July 11 and July 26 when Defendant's counsel sent a fax noticing Plaintiff's deposition five days later on July 31, the day that discovery was scheduled to end.  Plaintiff's counsel then informed Defendant that she and Plaintiff were not available on this date.  Communication apparently ceased until August 8. [*Id.* at Exh. E].  If both counsel knew that the date of Plaintiff's deposition was going to be a problem, it is inconceivable to the Court why they allowed the date of Plaintiff's deposition to approach and pass without any communication.  The parties have provided absolutely no evidence that they attempted to reschedule or agree to an extension of discovery so that the deposition could be taken.  Both parties are to blame for the current situation, and as a result, it would be unjust to award sanctions under Rule 37(a)(4) to Defendant for Plaintiff's filing of the protective order.

Instead of seeking sanctions under Rule 37(a)(4), Defendant contends that it is entitled to recover costs under FED. R. CIV. P. 37(d) because Plaintiff failed to attend her deposition and Plaintiff's counsel failed to cooperate.  [Doc. 27 at 5-6].  Plaintiff

34

responds that sanctions are unwarranted because Defendant only gave notice of two business days.  [Doc. 30].

>Under Rule 37(d),
>
>[i]f a party . . . fails . . . to appear before the officer who is to take the deposition, after being served with a proper notice, . . . . the court in which the action is pending on motion may make such orders in regard to the failure as are just . . . .  In lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

FED. R. CIV. P. 37(d), (b)(2).

Although Plaintiff failed to appear for the scheduled deposition, (Thompson Aff. ¶ 2 in Doc. 27 at Exh. F), the Court concludes that circumstances make an award of expenses unjust.  Although Plaintiff's counsel never responded to Defendant's July 11 request for deposition dates, Defendant provided notice of a July 31 deposition on July 26 instead of repeating the request or sending earlier notice of the deposition. Defendant was informed on July 27, 2006, that Plaintiff was unable to attend the deposition, which is reasonable notice.  *Cf. Ogletree v. Keebler Co., Inc.*, 78 F.R.D. 661, 662 (N.D. Ga. 1978) (finding that party not given reasonable notice of cancellation of deposition when deposition cancelled two hours before it was scheduled).  Evidence

AO 72A
(Rev.8/82)

indicates that Defendant next attempted to contact Plaintiff's counsel on August 8 about discovery issues. [Doc. 27 at Exh. E]. Thus, Defendant was aware that Plaintiff was not going to attend, but did not attempt to find an alternative date and still planned for the deposition on July 31. The Court recognizes that July 31 was the last day that Plaintiff could have been deposed under the discovery deadline, but the absence of evidence showing that Defendant tried alternate means to extend discovery or find a different date for the deposition is Defendant's counsel's fault. Plaintiff's counsel is, however, not blameless as she never responded to the July 11 request for dates of availability for Plaintiff's deposition despite knowing that discovery was scheduled to end on July 31. However, because Defendant was given reasonable notice that Plaintiff could not attend the deposition but still planned for the deposition, Defendant is not entitled to expenses.

Accordingly, the Court **DENIES** Defendant's request for sanctions under Rule 37(d).

> 2.    *Defendant's Construed Motion for a Protective Order [Doc. 22 at 5-7]*

Defendant seeks a protective order under Rule 26(c) to the extent that Plaintiff's discovery requests seek information concerning Defendant's employee's personnel files

and medical information in that Plaintiff sought information about individuals who applied for short-term disability.    Defendant contends that personnel files are confidential such that employees have an expectation of privacy.    Defendant also contends that the policy of safeguarding employee personnel files and medical information under HIPAA also supports a protective order.  [Doc. 22 at 5-7].  Plaintiff responds that Defendant cannot obtain a protective order for trial testimony and trial exhibits.  [Doc. 28 at 4].

As discussed above, Rule 26(c) governs protective orders.  When a party moves for a protective order, the party must provide "a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action."  FED. R. CIV. P. 26(c).  Defendant's brief merely states that "Defendant endeavored to enter into a stipulated protective order with Plaintiff to no avail."  [Doc. 22 at 5].  The Court does not believe that this statement meets the certification requirement under Rule 26(c).  Plaintiff's objection to the protective order indicates, however, that the parties cannot resolve the dispute without court action.  [*See* Doc. 28 at 4-5].  As a result, the Court will consider the motion for a protective order.  *See Land Ocean Logistics, Inc. v. Aqua Gulf Corp.*, 181 F.R.D. 229,

AO 72A
(Rev.8/82)

235-36 (W.D.N.Y. 1998) ("[C]ourts have excused the good faith requirement . . . where efforts at informal compromise would have been futile.").

The Court concludes that Defendant has shown good cause for a protective order. Initially, the Court notes that Defendant has insufficiently explained how or why the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat 1936 (1996), applies to the instant case. [*See* Doc. 22 at 6-7 & n.2].[6] As a result, the Court will not rely on HIPAA to craft a protective order.  First, it appears that Plaintiff is not seeking medical records but only information about who applied for short-term disability, not the reasons that the disability was sought, which suggests that medical information is not being sought.  Second, to the extent that HIPAA applies and Defendant is concerned that the court's order will lead to a violation of HIPAA, the Court notes that HIPAA regulations permit "protected health information to be revealed in response to a discovery request, if the parties agree to a protective order and have presented it to the Court, or have asked the Court for a protective order." *U.S. ex rel. Camillo v. Ancilla Sys., Inc.*, 233 F.R.D. 520, 522 (S.D. Ill. 2005) (citing 45 C.F.R.

---

[6]     For instance, Defendant does not identify whether its short term benefits providers qualified as covered entities under 45 C.F.R. § 160.103.  Defendant also fails to explain why it is a business associate and not a plan sponsor under HIPAA. *See* 45 C.F.R. §§ 164.502, 164.504, 164.512.

§ 164.512(e)(1)).  Thus, HIPAA does not prevent disclosure of medical information so long as a protective order is in place.

The Court agrees with Defendant that employee medical records and personnel information are private information that should not be widely disseminated. *See Ladson v. Ulltra East Parking Corp.*, 164 F.R.D. 376, 377 n.2 (S.D.N.Y. 1996) ("Legitimate privacy concerns exist with regard to personnel files."); *E.E.O.C. v. Ala. Dept. of Youth Servs.*, No. 2:05mc3256, 2006 WL 1766785 at * 2 (M.D. Ala. June 26, 2006) ("Undoubtedly, employees have a strong privacy interest in the contents of their medical records and employers have an interest in protecting those records."). This interest is clearly more important than Plaintiff having unfettered access to this information.  As a result, a protective order is warranted in this case to prevent the dissemination to third parties of personnel and medical information of nonparties. However, nothing in the terms of the following protective order prohibits either party from using information obtained in discovery to request or defeat summary judgment or during trial proceedings.[7]

_____

[7]     The Court believes that this portion of the order should alleviate Plaintiff's concerns about the public right to access to evidence submitted at trial.  Indeed, the Court notes that its protective order cannot extend to evidence introduced at trial. *See Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999) (concluding protective order was invalid because "it is not limited to

AO 72A
(Rev.8/82)

Accordingly, Defendant's motion for a protective order is **GRANTED** under the following terms:

1.  The parties shall have the right to designate as confidential any documents and information produced in response to discovery requests served in this case (or ordered to be answered) that the parties reasonably believe in good faith contain confidential, private or sensitive personal or commercial information, trade secrets, confidential research, development, or any other confidential proprietary or business information.   Notwithstanding whether a particular document is designated confidential, the parties **SHALL** redact Social Security numbers and dates of birth from any document to be produced that pertains to any non-party to this litigation. Any materials designated confidential shall be used by the party receiving them only in connection with this litigation and appeal of this case, and shall not be used for any business, competitive or other purpose, and the parties and their lawyers shall not disclose them to any other person or entity except as expressly provided by the terms of this Order.

---

pretrial discovery; it seals the documents covered by it even after they are introduced at trial").

40

2.  No party shall disclose personnel files or employee medical information obtained through discovery to third parties except as expressly provided by the terms of this Order.  The medical information and personnel files may be used as evidence in court proceedings to the extent that the files are relevant to Plaintiff's retaliation claims or Defendant's opposition to them.

3. Materials considered confidential or produced pursuant to the protective order shall be so designated by stamping the same "Confidential" at the time of production. Inadvertent failure to designate a document as protected at the time of production shall not constitute a waiver as long as the correction is made in writing as soon as practicable following discovery of the inadvertent error.  Any party objecting to the designation of a document as protected under this Order may file a motion with the Court, but only after holding an in-person good faith conference with the opposing party.

4.  Documents and information denoted as confidential may be made available only to the parties; their lawyers and lawyers' staff members working on the litigation; experts and consultants retained for purpose of the litigation; any witness in open court or a deposition; and the Court, its personnel and any court reporter.

41

5.  Parties wishing any document filed as part of the record under seal must first present a motion and/or consent order regarding said document to the Court.  Unless the parties otherwise consent to the filing of a particular document under seal, no motion seeking to file any document under seal shall be filed which does not contain a certification of counsel that they have conferred in good faith in an effort to reach an agreement about the sealed filing of the document.  The Clerk of the Court is not authorized to accept for filing any document designated as sealed or confidential without an order from the Court approving specific documents to be filed under seal.

6.  At the conclusion of the litigation and any appeal, the parties shall return any documents (and copies thereof) produced pursuant to the protective order to the party who produced them.

D.      *Motion for an Extension of Time to Conduct Discovery  [Doc. 25]*

Defendant seeks an extension of the discovery period in the case through and including December 1, 2006, because: (1) Defendant has not yet taken Plaintiff's deposition and no other depositions have been taken; (2) certain discovery has not yet been produced; and (3) Plaintiff's amended complaint contains new substantive allegations.  [Doc. 25].  Plaintiff objects to an extension of discovery until December

AO 72A
(Rev.8/82)

1, but requests that discovery be extended an additional sixty days following disposition of the outstanding discovery motions.  [Doc. 29].

Under FED. R. CIV. P. 16(b), "[a Rule 16(b)] schedule shall not be modified except upon a showing of good cause and by leave of . . . a magistrate judge."  FED. R. CIV. P. 16(b).  Good cause is shown if the Rule 16(b) schedule "cannot reasonably be met despite the diligence of the party seeking the extension."  FED. R. CIV. P. 16 advisory committee notes (1983).

The Court concludes that Defendant has shown good cause in that discovery remains outstanding and depositions in the case have not yet been taken.  Accordingly, the Court **GRANTS** the motion to extend the time for discovery.  The parties **SHALL** have until December 1, 2006, to complete discovery.  No further extensions shall be granted.

## III.   CONCLUSION

For the aforementioned reasons, the undersigned **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion to compel [Doc. 18]; **DENIES** Plaintiff's motion for a protective order [Doc. 21]; **GRANTS** Defendant's construed motion for a protective order [Doc. 22 at 5-7]; and **GRANTS** Defendant's motion for an extension of time to complete discovery [Doc. 25].  Any interrogatory or document production

43

responses, and any discovery requests which the Court has directed Plaintiff to narrow, shall be served on the opposing party within twenty (20) days of this Order.  Plaintiff's deposition shall be scheduled and taken within thirty (30) days of this Order, unless the parties mutually agree to a different date prior to the expiration of the thirty (30) day period.  The parties **SHALL** have until December 1, 2006, to complete discovery. No further extensions shall be granted.

In light of the extended discovery period and the parties' apparent inability to resolve discovery disputes on their own, the Court provides the following guidelines for the parties if they seek to involve the Court in a future discovery dispute.  When there is a dispute as to the discoverability of information, the parties **SHALL** discuss the dispute in person before seeking resort to this Court.[8]  If a party opts to have the Court intervene in a discovery dispute, the movant **SHALL** specifically inform the Court in a certificate of conferral the date, time, and length of counsel's in-person meetings.  Counsel also **SHALL** swear to this information in an affidavit, providing a detailed summary of the efforts to resolve the discovery dispute without the Court's

---

[8]     It appears that many of the problems with the discovery disputes between the parties is their heavy reliance on faxes, mail, and email.  Clearly, these methods of communication are not working for the parties' counsel.  Thus, emails, faxes, and letters will not be sufficient for the parties to show that they have conferred in good faith.

44

intervention.  If it appears that the parties' counsel have not expended sufficient time and effort to resolve the dispute on their own, the Court will not hesitate to deny any motions to compel or for protective orders, or impose sanctions for failure to attempt a good faith resolution of the dispute.  Such sanctions shall include monetary penalties against the offending parties and their lawyers, as well as the exclusion of evidence not seasonably produced.

**IT IS SO DIRECTED AND ORDERED**, this the 1st day of September, 2006.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

45